**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X   **Docket No.**
JOHNNY RODRIGUEZ,

         *Plaintiff*,   **COMPLAINT**

  -against-

             **PLAINTIFF DEMANDS**
TUTOR PERINI CORPORATION,   **A TRIAL BY JURY**

        *Defendant.*
------------------------------------------------------------X

  Plaintiff JOHNNY RODRIGUEZ ("Plaintiff"), by his attorneys, PHILLIPS & ASSOCIATES, PLLC, hereby complains of the Defendant, upon information and belief, as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), 42 U.S.C. §1981 ("Section 1981"), the New York Human Rights Law, 15 N.Y. Exec. Law §§ 290 *et seq.* ("NYSHRL"), and the New York City Human Rights Law, New York City Administrative Code §§ 8-107 *et. seq.* ("NYCHRL"), and seeks damages to redress the injuries he has been suffering as a result of being discriminated against, subjected to discriminatory harassment and a hostile work environment on the basis of his national origin (Puerto Rican and Dominican) and race (Hispanic), together with sexual harassment and retaliation.

## JURISDICTION, VENUE, AND PROCEDURAL PREREQUISITES

2. Jurisdiction of this Court is proper under 42 U.S.C. § 2000e-5(f)(3), 42 U.S.C. § 1981, and 28 U.S.C. §§ 1331 and 1341.

3. The Court has supplemental jurisdiction over the claims that Plaintiff has brought under state and city law pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) as one or more Defendants reside within the Eastern District of New York or the acts complained of occurred therein.

5. By: (a) timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on August 5, 2020; (b) receiving a Notice of Right to Sue from the EEOC on March 3, 2021; (c) commencing this action within 90 days of the issuance of the Notice of Right to Sue by the EEOC; and (d) contemporaneously with the filing of this Complaint, mailing copies thereof to the New York City Commission of Human Rights ("NYCCHR") and the Office of the Corporation Counsel of the City of New York pursuant to the notice requirements of § 8-502 of the New York City Administrative Code, Plaintiff has satisfied all of the procedural prerequisites for the commencement of the instant action. A copy of the Notice of Right to Sue is annexed hereto as Exhibit A; a copy of the transmittal letter to the NYCCHR, *et ano.*, is annexed hereto as Exhibit B.

## PARTIES

6. Plaintiff is a Puerto Rican and Dominican, Hispanic male resident of the State of New York, Bronx County.

7. Upon information and belief, Defendant TUTOR PERINI CORPORATION ("TUTOR PERINI"), is a foreign business corporation, organized and existing under the laws of the State of New York.

8. At all times material, Defendant was an employer under Title VII, Section 1981, the NYSHRL, and the NYCHRL.

9. Upon information and belief, Defendant TUTOR PERINI employs fifteen or more employees.

## MATERIAL FACTS

2

10. Plaintiff began working for Defendant TUTOR PERINI in or around October 2016 as a "Site Safety Manager." In or around July 2019, Plaintiff was promoted to oversee the safety of the entire East Side Access CQ033 Mid Day Storage Yard job site in Long Island City, New York.

11. Starting in or around June 2019, Plaintiff has been exposed to a constant and continuous hostile work environment wherein he and other Hispanic coworkers were subjected to a plethora of degrading epithets and insults made by Jose Cunha, the General Superintendent of Operations at Defendant TUTOR PERINI, related to their race and national origin (Hispanic/Puerto Rican/Dominican). Plaintiff was also subjected to sexually harassing comments by Cunha.

12. The discrimination and harassment were pervasive, taking place on an almost daily basis throughout Plaintiff's employment.

13. Cunha was Plaintiff's supervisor and/or had supervisory authority over Plaintiff. Cunha had the authority to hire, fire or affect the terms and conditions of Plaintiff's employment, or to otherwise influence the decisionmaker of the same.

14. Throughout Plaintiff's employment at Defendant TUTOR PERINI, Cunha stated on multiple occasions that he does "not like Puerto Ricans" and called Plaintiff and other Hispanic workers "spics," "dumb spics," "dumb Puerto Ricans," "stupid," "monkeys," and "niggers."

15. These comments were often made in front of upper management employees of Defendant TUTOR PERINI, including Robert Pachomski ("Pachomski"), who is the Director of Safety and Plaintiff's direct supervisor, and Dennis McNerney ("McNerney"), the Project Manager of the entire project that Plaintiff was working on. Neither Pachomski nor McNerney took any action to stop and/or further prevent the hostile work environment

that Cunha has been perpetuating at Defendant TUTOR PERINI, thereby acquiescing to the harassment.

16. On or about August 19, 2020, while Plaintiff and Cunha were in the office trailer, Plaintiff asked Cunha a question about a work location, to which Cunha responded, "I'm sure a fucking Puerto Rican is not questioning me," referring to Plaintiff. Plaintiff felt extremely uncomfortable and humiliated.

17. On or about August 22, 2019, Cunha stated, "I need safety as much as I need to get fucked in my ass," making Plaintiff feel extremely uncomfortable.

18. Plaintiff stated that that comment was inappropriate.

19. Cunha then replied, "I don't give a fuck. That's not sexual harassment."

20. Cunha continued, "I want to get fucked in my ass." Plaintiff replied, "Not by me." Cunha then stated, "You're only gay if you like it," making Plaintiff feel extremely uncomfortable.

21. On or about August 27, 2019, in front of Plaintiff, Cunha told another Puerto Rican employee of Defendant TUTOR PERINI, "I speak English, I don't speak Puerto Rican."

22. Plaintiff felt extremely uncomfortable by this comment and asked Cunha what his problem was.

23. To Plaintiff's disbelief and utter disgust, Cunha then stated that he did not like Puerto Ricans and continued, "I like Puerto Ricans like I like black people. I think my family should have a black guy tied up in the backyard" in front of multiple employees of Defendant TUTOR PERINI, effectively insinuating that Puerto Ricans and black people should be lynched.

24. Cunha continued to make inappropriate comments and to harass Plaintiff, including constantly degrading him and speaking to him disrespectfully, telling him to "shut the

4

fuck up" and that he "can fire [Plaintiff]," effectively threatening Plaintiff's job and making him feel extremely uncomfortable.

25. On or about February 3, 2020, Plaintiff complained to Dennis McNerney, the Project Manager at the East Side Access CQ033 Project for Defendant TUTOR PERINI, about Cunha's harassment. McNerney told Plaintiff that he would "take care of it" but nothing changed, and the hostile work environment continued.

26. In fact, the very next day, on or about February 4, 2020, when Plaintiff stated that he knew someone that Defendant TUTOR PERINI could hire for a project for which additional employees were needed, Cunha stated, "He's probably Puerto Rican and he is no good."

27. Offended, Plaintiff stated that Puerto Ricans are hard working.

28. Cunha then stated: "Puerto Ricans; the only good thing they work hard at is stealing cars and shooting people."

29. When Plaintiff asked him what his problem was with Puerto Ricans, he stated "You don't know I'm a racist?"

30. Plaintiff felt extremely uncomfortable and disturbed by Cunha's comments, told him that he could not continue that conversation, and walked away.

31. On or about February 6, 2020, Plaintiff started speaking to Cunha about a work-related matter when Cunha stated, "I'm going to beat you with a stick if you don't leave me alone."

32. Plaintiff felt extremely uncomfortable, humiliated, and intimidated by Cunha's threat of physical violence.

33. On or about February 19, 2020, Plaintiff was told by another employee of Defendant TUTOR PERINI that Cunha had transferred an employee who had been complaining

about him to another work location. Plaintiff understood that Cunha would retaliate against anyone complaining about him.

34. On or about February 21, 2020, Cunha falsely accused Plaintiff of stealing a hat from his car. When Plaintiff complained about this accusation to Robert Pachomski, Plaintiff's direct supervisor, Pachomski laughingly stated in front of a number of employees of Defendant TUTOR PERINI that they thought it would be "funny" to accuse Plaintiff of stealing a hat. Plaintiff felt extremely humiliated and offended by Cunha's and Pachomski's conduct. Plaintiff understood their conduct to be aimed to purposefully humiliate and degrade him by implying that Hispanic and/or Puerto Rican individuals are thieves.

35. On or about May 21, 2020, Plaintiff had a lunch meeting with Cunha and other employees of Defendant TUTOR PERINI. When a Puerto Rican employee told Cunha that there existed a safety issue related to one of the projects and that they needed to talk, Cunha stated that they did not need to speak and that "Portuguese and Puerto Ricans do not get along." Upon information and belief, Cunha is of Portuguese national origin.

36. On or about May 28, 2020, Cunha again started to harass and curse at Plaintiff, continuously telling him, "get the fuck out of here" and "go fuck yourself." He also stated that Plaintiff could "report [him]" for speaking to him in that manner. Plaintiff understood Cunha to be extremely confident that no action would be taken against him even if Plaintiff complained.

37. On or about June 3, 2020, Pachomski called Plaintiff into a conference room and started aggressively questioning him about various work-related false allegations made against Plaintiff by Cunha. Plaintiff told Pachomski that he was making him feel uncomfortable.

38. Plaintiff also complained to Pachomski about Cunha continuing to harass and curse at

6

him, which Pachomski acknowledged as true but took no further action to stop and/or further prevent.

39. Upon receiving a claim letter and draft complaint from Plaintiff's attorneys on or about June 17, 2020, Defendant TUTOR PERRINI conducted an investigation into Plaintiff's claims.

40. Upon information and belief, several employees who were interviewed corroborated Plaintiff's claims.

41. Defendant TUTOR PERRINI clearly did not do an adequate investigation as there was no proper remedial action taken against Cunha.

42. Although Plaintiff was informed that Cunha would not be on Plaintiff's job site anymore, this was a lie.  Cunha continued to be the Superintendent in charge of Plaintiff's projects, up until he passed away in or around February 2021.

43. After Plaintiff complained, Plaintiff was harassed and accused of improperly doing his job by Cunha's nephew, Alex Cunha, in complete retaliation for his complaints of discrimination.

44. Many of Plaintiff's e-mails were also getting ignored by employee friends of Cunha.

45. Since Cunha passed away, Pachomski has remained Plaintiff's direct supervisor.

46. These continuous discriminatory acts and comments made Plaintiff feel extremely uncomfortable, humiliated, and degraded.

47. Upon information and belief, other sub-contractors have previously made discrimination complaints against Cunha.  Upon information and belief, Defendant TUTOR PERRINO was well aware of these discrimination complaints.

48. Despite Plaintiff's complaints, Defendant failed to sufficiently investigate the allegations and to take prompt and appropriate remedial action to prevent or correct further

discrimination and harassment.

49. Defendant was well aware of all of the above discriminatory comments and actions that Plaintiff were being subjected to on a daily basis. Upon information and belief, at least three other employees of Defendant TUTOR PERRINI have complained about Cunha subjecting them to a hostile work environment and/or race/national origin discrimination.

50. Defendant knew that Plaintiff was being subjected to a hostile work environment.

51. Defendant condoned, supported, ratified, and furthered the discriminatory and hostile conduct.

52. Defendant willingly ignored their obligation to prevent discrimination in the workplace - to the detriment of Plaintiff.

53. Defendant's lack of action to help Plaintiff with regard to the open, obvious, and well-known harassive behavior, obviously fueled by animus toward Puerto Rican, Dominican, and Hispanic individuals, meant that Defendant was acquiescing to the discrimination.

54. Despite Defendant's clear knowledge of the discriminatory actions against Plaintiff, Defendant did not make any effort to remedy the situation.

55. Throughout his employment, Plaintiff has been feeling humiliated, stressed, angered, fearful, and frustrated.

56. Defendant allowed an environment to exist that is permeated with discriminatory insults, ridicule, verbal assaults, open-racial epithets, retaliation and other unlawful acts against Plaintiff and other Puerto Rican, Dominican, and Hispanic employees.

57. Defendant's actions and conduct were intentional, grossly negligent, and intended to harm Plaintiff.

58. As a result, Plaintiff was unlawfully humiliated, degraded and belittled, suffered violations of his rights, suffered mental and emotional distress, experienced

inconvenience, pain and suffering, humiliation, stress, anxiety, embarrassment, special damages and other emotional distress.

59. Plaintiff also suffered emotional pain, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

60. Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

61. Punitive damages are warranted against Defendant.

## AS A FIRST CAUSE OF ACTION
## DISCRIMINATION UNDER TITLE VII

62. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

63. This claim is authorized and instituted pursuant to the provisions of Title VII for relief based upon the unlawful employment practices of the Defendant TUTOR PERINI.

64. 42 USC 2000e-2 (a), states in relevant part:

> It shall be an unlawful employment practice for an employer (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to their compensation, terms, conditions, or privileges of employment, because of such individual's **race**, color, religion, **sex**, or **national origin** . . .

65. Plaintiff was discriminated against and harassed based on his race (Hispanic), sex (male), and national origin (Puerto Rican and Dominican).

66. Plaintiff complains of Defendant TUTOR PERINI's violation of Title VII's prohibition against employment-based discrimination, in whole or in part, upon an employee's national origin (Dominican), race (Hispanic), and sex (male).

## AS A SECOND CAUSE OF ACTION
## RETALIATION UNDER TITLE VII

67. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this Complaint.

68. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) provides that it shall be unlawful employment practice for an employer:

> (1) to . . . discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

69. Defendant engaged in unlawful employment practice prohibited by Title VII by discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of his opposition to the unlawful employment practices of Defendant.

## AS A THIRD CAUSE OF ACTION
## DISCRIMINATION UNDER THE NYSHRL

70. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

71. New York State Executive Law §296 provides that,

> 1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, **race**, creed, color, **national origin**, sexual orientation, gender identity or expression, military status, **sex**, disability, predisposing genetic characteristics, familial status, marital status, or status as a victim of domestic violence, … to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

72. Defendant engaged in unlawful discriminatory practices by discriminating against Plaintiff because of his national origin (Puerto Rican and Dominican), race (Hispanic), and sex (male).

## AS A FOURTH CAUSE OF ACTION
## RETALIATION UNDER THE NYSHRL

73. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

10

74. Executive Law § 296 provides that, "7. It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has filed a complaint, testified, or assisted in any proceeding under this article."

75. Defendant engaged in unlawful discriminatory practices by discriminating against Plaintiff because of his opposition to the unlawful employment practices of the Defendant.

## AS A FIFTH CAUSE OF ACTION
## DISCRIMINATION UNDER THE NYCHRL

76. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

77. The New York City Administrative Code § 8-107(1) provides that

> It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, **race**, creed, color, **national origin**, **gender**, disability, marital status, partnership status, caregiver status, sexual and reproductive health decisions, sexual orientation, uniformed service or alienage or citizenship status of any person … to discriminate against such person in compensation or in terms, conditions or privileges of employment.

78. Defendant engaged in unlawful discriminatory practices in violation of New York City Administrative Code § 8-107(1)(a) by creating and maintaining discriminatory working conditions and otherwise discriminating against Plaintiff because of his (Puerto Rican and Dominican), race (Hispanic), and gender (male).

## AS A SIXTH CAUSE OF ACTION
## RETALIATION UNDER THE NYCHRL

79. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

11

80. The New York City Administrative Code §8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discriminate against any person because such person has opposed any practices forbidden under this chapter. . ."

81. Defendant engaged in unlawful discriminatory practices in violation of New York City Administrative Code §8-107(7) by discriminating against Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Defendant.

## AS A SEVENTH CAUSE OF ACTION
## UNDER 42 U.S.C. SECTION 1981

82. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

83. 42 U.S.C. Section 1981 states in relevant part as follows:

    a. Statement of equal rights: All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

    b. "Make and enforce contracts" defined: For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C.A. § 1981.

84. Plaintiff was discriminated against because of his race as provided under 42 U.S.C. Section 1981 and has suffered damages as set forth herein.

## JURY DEMAND

85. Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendant:

A. Declaring that Defendant engaged in unlawful employment practices prohibited by Title VII, 42 U.S.C. Section 1981, the NYSHRL, and the NYCHRL in that Defendant discriminated against Plaintiff on the basis of his national origin, race, and sex/gender

and retaliation;

B. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to his reputation in an amount to be proven;

C. Awarding Plaintiff punitive damages;

D. Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

E. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy Defendant's unlawful employment practices.

Dated: New York, New York
April 13, 2021

**PHILLIPS & ASSOCIATES,
ATTORNEYS AT LAW, PLLC**

By: _____
Brittany A. Stevens, Esq.
*Attorneys for Plaintiff*
45 Broadway, Suite 620
New York, New York 10006
T: (212) 248 – 7431
F: (212) 901 – 2107
bstevens@tpglaws.com